UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK **CV 13**

**5921**

-------------------------------------------------------------x

CATHERINE CYRUS

              Plaintiff,

       -against-

THE CITY OF NEW YORK, OFFICER JIMMY
CLERGE (NYPD) SHIELD #1541, OFFICER
TANESHA FACEY (NYPD) SHIELD #14478,
OFFICER DONALD BROWN (NYPD) SHIELD
#15026, SERGEANT POSEIDON SOUNDIAS
(NYPD) SHIELD #1426, AND OFFICERS JOHN DOE
#1-10 (THE NAME JOHN DOE BEING FICTICIOUS,
AS THE TRUE NAME(S) IS/ARE PRESENTLY
UNKNOWN),

              Defendant.

-------------------------------------------------------------x

Index No.:

**COMPLAINT**

**JURY TRIAL
DEMANDED**

MATSUMOTO, J.

AZRACK, M.J.

The Plaintiff, complaining by her attorney(s), THE LAW OFFICE OF JEFFREY

CHABROWE, P.C., respectfully shows this Court and alleges:

## INTRODUCTION

1.  This is a civil rights action to vindicate the rights of Plaintiff Catherine Cyrus, who was

    wrongfully arrested, assaulted, denied medical care, and incarcerated for five days after

    members of the New York City Police Department ("NYPD") stopped her for no reason,

    and when she protested, retaliated by bringing false charges against her.

2.  The malicious prosecution of Catherine Cyrus culminated in a bench trial before the

    Honorable ShawnDya Simpson, who dismissed the Prosecution's charges without

    requiring the Defense to put on a case.

3.  Upon dismissal, Judge Simpson emphasized that the matter should never have been

    brought, and that she found the arresting officer's story "totally incredible."

1

4. The individual Defendants in this case are now being sued for their respective roles in the violation of Ms. Cyrus's rights.

5. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens.

## JURISDICTION

6. Jurisdiction is founded upon the existence of a Federal Question.

7. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Section 1983 and arising under the law and statutes of the State of New York.

8. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

9. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Eastern District.

2

## PARTIES

10. At all times relevant and hereinafter mentioned, Plaintiff CATHERINE CYRUS was a resident of Kings County in the City of New York.

11. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

12. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT, including all the police officers thereof.

13. Upon information and belief, at all times hereinafter mentioned, Defendant OFFICERS JIMMY CLERGE, TANESHA FACEY, and DONALD BROWN their commanding officer Defendant SERGEANT POSEIDON SOUNDIAS, and OFFICER(S) JOHN DOE #1-10 were employed by the Defendant CITY OF NEW YORK, as member(s) of its police department, assigned to the 81st Precinct.

14. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the POLICE CHIEF OF THE NEW YORK CITY POLICE DEPARTMENT is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training,

supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

15. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

16. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

### -The Stop-

17. On February 3, 2012, at approximately 12:05pm, 24-year-old Catherine Cyrus was walking along Bainbridge Street, between Malcolm X Boulevard and Patchen Avenue, Brooklyn, New York, having just purchased a soda from a nearby convenience store.

18. Ms. Cyrus, who is African-American, was wearing a hoody and carrying the soda in a bag.

19. As Ms. Cyrus walked, she noticed that a police van appeared to be following her.

20. As the van drew nearer, a male from inside the van yelled, "Yo, son, come here!"

21. The van then came to a stop, and Defendants Clerge, Facey, and Brown exited the vehicle and surrounded Ms. Cyrus—Clerge in the front, and Facey and Brown standing behind her.

22. Clerge demanded to see Ms. Cyrus's identification.

23. When Ms. Cyrus asked why she was being stopped, Clerge repeated his demand more forcefully; Ms. Cyrus complied, handing the officer her identification.

24. Defendant Clerge then insisted that Ms. Cyrus tell him what was inside the bag that she was carrying.

25. Aware of her rights, Ms. Cyrus correctly stated that she was under no obligation to answer Clerge's question.

26. Clerge responded, "If it's alcohol you do!"

27. Ms. Cyrus then pulled out the soda she had just purchased, showed it to the officers, and asked, "All this harassment over a Sprite?"

28. An apparently infuriated Clerge responded by deliberately coughing in Ms. Cyrus's face, and telling her to leave the area.

29. Ms. Cyrus correctly stated that she was under no obligation to leave the area.

30. Defendant Facey then interjected, demanding to know who Ms. Cyrus had been referring to when she spoke of being harassed; before Ms. Cyrus could answer, Defendant Clerge abruptly arrested and handcuffed Ms. Cyrus absent anything remotely resembling probable cause.

31. Despite Clerge's undisputed role in the arrest, Defendant Facey was the "arresting officer" of record, and is referred to as such herein.

32. A witness at the scene, Abraham Jawara, was so disturbed by the officers' harassment of the Plaintiff that he approached them seeking to diffuse the situation.

33. In response, one of the officers screamed at Mr. Jawara, stating in sum and substance, "She asked for it. This whole block needs to be cleaned up!"

34. Defendants proceeded to transport Ms. Cyrus to the 81st Precinct for processing.

35. Shortly thereafter, Mr. Jawara went to the 81st Precinct to file a complaint based on the misconduct he had witnessed.

36. Defendant Supervisor Soundias recorded the complaint but upon information and belief, made no effort to take corrective action, and was otherwise deliberately indifferent to the rights of the Ms. Cyrus.

## -Defendant Facey's False Allegations and Testimony-

37. According to an entry Defendant Facey made in her notebook five minutes after the incident occurred, the basis for Ms. Cyrus's arrest was that after police requested Ms. Cyrus's identification, Ms. Cyrus spontaneously and for no apparent purpose, "charg[ed] towards [Facey] preventing [her] from performing official police duties."

38. Facey's online arrest report, which was entered by Defendant Clerge and approved by Defendant Soundias, told the same vague and nonsensical story that appeared in Facey's notebook.

39. Pursuant to Facey's description(s), Ms. Cyrus was charged with Obstructing Government Administration and Disorderly Conduct.

40. Notably, Ms. Cyrus was not charged with Attempted Assault for allegedly "charging" the officer; at trial, no other officers testified to having witnessed Ms. Cyrus "charge" anyone.

41. Apparently aware of the nonsensical nature of her allegations, Defendant Facey advanced a more elaborate version when she finally spoke to the District Attorney's office.

42. In contrast to her initial accounts, Facey told the prosecution that the interaction with the Plaintiff began when Facey observed Ms. Cyrus "slumped over, as if ill."

43. After Facey allegedly asked Ms. Cyrus if she was okay, Facey stated Cyrus became "irate" and "swung at [Facey's] face with an open hand."

44. Facey then claimed she asked Ms. Cyrus to walk away, but Ms. Cyrus nevertheless, "again attempted to slap [Facey.]"

45. At trial, Facey testified that she ducked both slap attempts and no contact was made between Facey and Ms. Cyrus.

46. On cross, Facey struggled to provide a coherent explanation as to why Ms. Cyrus was not charged with Attempted Assault at the time of her arrest if it was true Ms. Cyrus had twice attempted to slap her; it was equally unclear why Facey would have told Ms. Cyrus to walk away after the first attempted slap.

47. Defendant Clerge testified that he didn't see any attempted slaps initiated by the Plaintiff.

48. In dismissing the case, Judge ShawnDya Simpson offered an explanation for Clerge's inability to offer eye-witness testimony regarding any attempted slap(s): "He didn't see it because it didn't happen."

49. Judge Simpson further emphasized that she found Defendant Facey's testimony regarding the allegedly attempted slaps "totally incredible."

50. As a direct result of Defendant Facey's intentional and malicious misrepresentations to the District Attorney's office, charges of Attempted Assault in the Third Degree, Menacing in the Third Degree, and Harassment in the Second Degree were added against Ms. Cyrus.

**-Ms. Cyrus's Processing-**

7

51. Once at the 81st Precinct, Defendant Clerge ordered Ms. Cyrus to empty her pockets; Ms. Cyrus complied.

52. Clerge then ordered Ms. Cyrus to sit in a chair, take off her shoes, and hand them to him.

53. Since Ms. Cyrus was not wearing socks that day, she asked to be permitted to take her shoes off one at a time, hand them over for inspection, and then have them returned so as to avoid any direct contact between her feet and the filthy precinct floor.

54. Clerge simply repeated his order that Ms. Cyrus hand over her shoes.

55. Ms. Cyrus complied, though kept her feet elevated to avoid contact with the floor.

56. Clerge responded by walking behind Ms. Cyrus, cuffing her roughly from behind, and shoving his body over hers, pressing her shoulders down painfully until she was forced to bring her bare feet in contact with the floor; terrified and in pain, Ms. Cyrus began to cry, asking, "Why are you doing this to me?"

57. At this point, another male officer present ("Officer Doe #1") who had just witnessed the exchange deliberately stood up and walked out of the room, leaving Ms. Cyrus to endure Clerge's abuses unprotected.

58. Clerge proceeded to uncuff Ms. Cyrus and order her to walk, still barefoot, into a nearby cell; Clerge promised to return her shoes once she had complied with his sadistic command.

59. Ms. Cyrus implored Defendant Clerge to please just return her shoes.

60. In response, Clerge lunged at Ms. Cyrus, abruptly twisting her arm behind her back and forcing her into the cell violently, causing significant pain to her arm and shoulder.

61. Clerge vindictively forced Ms. Cyrus sit barefoot in the cell for approximately 30 minutes before finally returning her shoes.

8

62. Later that day, officers sought to fingerprint Ms. Cyrus, but their treatment of her had been so malicious, so petty, and such an affront to Ms. Cyrus's rights, she refused in protest.

63. When Ms. Cyrus asked for medical attention for her arm and shoulder, officers denied the request, stating she would first have to submit to being fingerprinted.

64. Days passed; terrifying criminals came in and out of Ms. Cyrus's cell; Ms. Cyrus, who has been diagnosed with severe asthma, did not have access to her medication and officers refused her requests for treatment.

65. On the third day of Ms. Cyrus's wrongful incarceration, she was sent for a psychological evaluation; after hearing Ms. Cyrus's story, the therapist determined there was nothing wrong with Ms. Cyrus, and stated in sum and substance that Ms. Cyrus didn't need a psychotherapist, she needed a lawyer.

66. On the fourth day, Ms. Cyrus suffered an asthma attack; clearly in distress, Ms. Cyrus begged the guards for urgent medical care, but they refused.

67. Finally, Ms. Cyrus had the presence of mind to use the pay phone in her cell to dial 911; an ambulance was sent and medics were thankfully able to render enough aid at the scene to alleviate the worst of Ms. Cyrus's symptoms.

68. On or about Ms. Cyrus's fifth day of wrongful incarceration, increasingly afraid for her health and well-being, Ms. Cyrus finally allowed officers to take her fingerprints.

69. Shortly thereafter, Ms. Cyrus was arraigned and released on her own recognizance.

70. On May 9, 2013, some 15 months after Ms. Cyrus's wrongful arrest, the charges against her were summarily dismissed by Judge Shandya Simpson after a two day trial.

9

71. The prosecution's case was so plainly insufficient that the Defense was not required to put on a case.

72. Ms. Cyrus continues to suffer the effects of her terrifying experience to this day.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF CATHERINE CYRUS AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### —False Arrest and Imprisonment—

73. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 72.

74. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

75. Defendants arrested Catherine Cyrus absent probable cause.

76. The actions of Defendants violated Catherine Cyrus's rights under the United States Constitution. Given the total absence of any legal justification for arresting Catherine Cyrus, it was not objectively reasonable to arrest Catherine Cyrus for anything on February 3, 2012.

77. Defendants' actions were motivated by bad faith and malice.

78. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

10

79. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Catherine Cyrus has been irreparably injured.

## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF CATHERINE CYRUS AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### —Malicious Prosecution—

80. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 79.

81. The Fourth Amendment of the United States Constitution protects citizens from overzealous and malicious prosecution by government officials without probable cause.

82. Catherine Cyrus was prosecuted, without probable cause, relative to the February 3, 2012 arrest as set forth herein.

83. Said charges resulted in a loss of liberty for Ms. Cyrus, as she was incarcerated as aforedescribed pursuant to false and improper charges, and incurred substantial financial and emotional damages as a direct result.

84. Ms. Cyrus's criminal proceeding was terminated unambiguously in favor of Ms. Cyrus, as all charges were dismissed outright.

85. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Catherine Cyrus.

86. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

87. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Catherine Cyrus has been irreparably injured.

## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF THE PALINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-

88. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 87.

89. Defendants created false evidence against Plaintiff Catherine Cyrus.

90. Defendants forwarded false evidence and false information to prosecutors in the Kings County District Attorney's office.

91. Defendants misled the judge and the prosecutors by creating false evidence against Plaintiff Catherine Cyrus and thereafter providing false testimony throughout the criminal proceedings.

92. In creating false evidence against Plaintiff Catherine Cyrus, in forwarding false evidence and information to prosecutors, and in providing false and misleading testimony, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

93. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

94. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Catherine Cyrus has been irreparably injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Conspiracy to Violate Plaintiff's Civil Rights-

95. Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 94.

96. Defendant officers acting under color of state law in both their individual capacities and

as agents for the City of New York, conspired together, reached a mutual understanding,

and acted in concert to undertake a course of conduct violative of Plaintiffs' civil rights

by:

    a.  Agreeing to deliberately and maliciously fabricate evidence against the

        Plaintiff, and otherwise abuse process;

    b.  Agreeing to contrive false charges and falsely arrest/maliciously prosecute the

        Plaintiff;

    c.  Agreeing not to intervene with any of the police misconduct directed at Ms.

        Cyrus;

    d.  Denying the Plaintiff medical care; and

    e.  Using excessive force against the Plaintiff;

97. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

given that said actions were undertaken under color of state law.

98. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to

the rights of Ms. Cyrus.

99. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff

has been irreparably injured.

13

## AS AND FOR THE FIFTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Failure to Intercede-

100. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 99.

101. In creating false evidence against Plaintiff Catherine Cyrus, in forwarding false evidence and information to prosecutors, and in providing false and misleading testimony, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

102. The actions of Defendants detailed above violated the Plaintiff's rights under the United States Constitution. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

103. At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures were clearly established constitutional rights that a reasonable person would have known.

104. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Catherine Cyrus.

105. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

106. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Catherine Cyrus has been irreparably injured.

## AS AND FOR THE SIXTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Denial of Medical Care-

107. Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 106.

108. Under the Fourteenth Amendment, states must not deprive pre-trial detainees of their

basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety.

109. Ms. Cyrus suffered an asthma attack (i.e., a serious medical condition) during the course

of her wrongful incarceration as described herein.

110. Ms. Cyrus communicated this condition numerous times to the proper authorities;

nevertheless, officers reacted with deliberate indifference tantamount to criminal

recklessness, denying Ms. Cyrus access to appropriate medical care.

111. This conduct on the part of Defendants was a violation of 42 U.S.C. §1983, given that

said actions were undertaken under color of state law.

112. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference

to the rights of Ms. Cyrus.

113. As a direct and proximate result, Ms. Cyrus has been substantially injured.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT CLERGE

### Violation of Constitutional Rights Under Color of State Law
### -Excessive Force-

114. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 113.

115. Defendant Clerge used excessive force against the Plaintiff by aggressively rear cuffing her behind a chair, then pressing his body weight over the Plaintiff's shoulders to force the Plaintiff's bare feet to come in contact with the floor; also, by twisting the Plaintiff's arm and shoulder, thereby forcing the Plaintiff into a cell without justification.

116. Any force used against the Plaintiff was excessive because she had not committed a crime and there was no probable cause to believe Plaintiff had committed a crime.

117. Clerge's actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Ms. Cyrus.

118. Clerge is liable for said damage and injuries pursuant to the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

119. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Catherine Cyrus was irreparably injured.

16

## AS AND FOR THE EIGHTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS AGAINST
## ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### —Malicious Abuse of Process—

120. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 119.

121. Defendants issued legal process against the Plaintiff.

122. Defendants issued legal process against the Plaintiff to obtain a collateral objective outside the legitimate ends of the legal process.

123. Defendants issued legal process to: punish the Plaintiff for challenging the legal basis for her stop, arrest, and prosecution; and/or to punish Plaintiff for continuing to protest her wrongful arrest once in custody; and/or in the interest of manipulating stop/arrest statistics to reflect favorably on the officers involved and/or their colleagues at the 81st Precinct.

124. Defendants acted with intent to do harm to the Plaintiff, and without excuse or justification.

125. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

126. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has been irreparably injured.

## AS AND FOR THE NINTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT CITY OF NEW YORK

**Violation of Constitutional Rights Under Color of State Law
-Implementation of Municipal Policies, Practices, and Customs that Directly Violate
Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional
Deprivations and Failure to Train and Supervise Employees
Under Color of State Law-**

127. Plaintiff incorporates by reference and reallege each and every allegation stated in
Paragraphs 1 through 126.

128. Upon information and belief, Defendants City of New York, Soundias, and Doe #1-10
who were supervisors and final decision makers, as a matter of policy, practice, and
custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's
constitutional rights and laws of the United States, in that they failed to adequately
discipline, train, supervise or otherwise direct police officers concerning the rights of
citizens, allowed or encouraged employees to fabricate evidence against the Plaintiff,
allowed or encouraged failures to disclose exculpatory evidence, allowed or encouraged
the forwarding of false or otherwise unreliable evidence to prosecutors, allowed or
encouraged officers to testify falsely, and allowed or encouraged failures to investigate
further when evidence plainly indicated the criminal allegations against the Plaintiff had
been fabricated.

129. In the alternative, and upon information and belief, Defendants City of New York and
Doe #1-10 instituted policies addressing the topics listed above, but through a culture of
gross negligence, carelessness, malice, and/or the enforcement of illegal and immoral
arrest quotas, demonstrated a deliberate and willful indifference to the constitutional
rights of the Plaintiff.

18

130. Upon information and belief, from approximately 2008 to 2009, Officer Adrian Schoolcraft, who like the Defendants in this case was assigned to work out of the 81st Precinct, secretly recorded numerous roll calls at the precinct in which superiors urged officers to manipulate the "stats" the department was under pressure to produce: specifically, officers were told to arrest people who were doing little more than standing on the street as the Plaintiff was doing in this case. After voicing his concerns, Schoolcraft was allegedly harassed and reassigned to a desk job. After he left work early one day, a swat unit is alleged to have illegally entered his apartment, physically abducted him and forcibly admitted him to a psychiatric facility, where he was held against his will for several days. In 2010, Schoolcraft released the audio recordings to *The Village Voice*, leading to the reporting of a multi-part series titled *The NYPD Tapes*. That same year Schoolcraft filed a lawsuit against the NYPD and Jamaica Hospital. In 2012 *The Village Voice* reported that a 2010 unpublished report of an internal NYPD investigation found the 81st precinct had evidence of quotas.

131. Upon information and belief, in 2011, Kings County District Attorney Charles Hynes created the Conviction Integrity Unit in response to an ever-increasing number of wrongful convictions in Kings County.

132. Upon information and belief, in or about July of 2013, the Kings County District Attorney's efforts substantially expanded, as the office announced the formation of an unprecedented panel of former prosecutors, professors, and retired judges to review as many as 50 convictions involving a former Kings County detective, Louis Scarella, who is alleged to have regularly sought false statements from witnesses, and whose work appears to have sent an array of innocent citizens to prison.

19

133. Upon information and belief, another former Kings County Detective, Michael Race, whose work has also been linked to the conviction of innocents, has been quoted in press accounts as stating that of the 750 murder investigations he ran, only one was "done the correct way, A to Z."

134. In August of 2013, federal Judge Shira A. Sheindlin of the Southern District of New York found the the New York City Police Department resorted to a "policy of indirect racial profiling" as officers routinely stopped "blacks and Hispanics who would not have been stopped if they were white." The Plaintiff in this case is African American.

135. The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, and in particular, those working in Kings County, as such a legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

136. Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers in Kings County and the 81st Precinct.

137. The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

138. This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

139. Upon information and belief, none of the Defendants named herein have been disciplined in any way for their actions relative to the Plaintiff; nor has the Internal Affairs Bureau undertaken an investigation of the events complained of herein.

140. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been irreparably injured.

## DEMAND FOR PUNITIVE DAMAGES

141. The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants. The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

142. The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Catherine Cyrus requests that this Honorable Court grant her the following relief:

A. A judgment against Defendants Clerge, Facey, Brown, Soundias and Doe(s) for compensatory damages, and punitive damages in an amount to be determined by a properly charged jury;

B. A judgment in favor of Plaintiff against Defendant City of New York for compensatory damages in an amount to be determined by a properly charged jury;

C. A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. §

    1988;

D. Any other relief this Court finds to be just, proper, and equitable.


Dated:  New York, New York
        October 2013

Respectfully Submitted By:

The Law Office of Jeffrey Chabrowe, P.C.
By:

Andrew L. Hoffman, Of Counsel
EDNY Bar Code Number: AH9502
261 Madison Avenue, 12 Floor
New York, New York 10016
T:    (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com